RECEIVED
IN LAKE CHARLES, LA.

OCT -1 2014

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **JOSHUA BREAUX, ET AL.** | * | CIVIL ACTION NO. 2:13-CV-00245 |
| **Plaintiffs** | * | |
| V. | * | JUDGE PATRICIA MINALDI |
| **CENTRIFUGE REPAIR & ENGINEERING L.P., ET AL.** | * | |
| | * | MAG. JUDGE KATHLEEN KAY |
| **Defendants** | * | |

**************************************************************

## MEMORANDUM RULING

Before the court are two Motions for Summary Judgment [Docs. 18 & 19], filed by M-I, L.L.C., d/b/a M-I SWACO (M-I), and Centrifuge Repair & Engineering, L.P. (CRE), respectively. The plaintiffs have submitted an Opposition [Doc. 23] to CRE's Motion [Doc. 19], to which CRE has timely filed a Reply [Doc. 25], but to date Joshua Breaux and Amber Breaux (plaintiffs) have not opposed M-I's Motion [Doc. 18]. For the following reasons, M-I's Motion [Doc. 18] is hereby **GRANTED**, and CRE's Motion [Doc. 19] is hereby **DENIED**.

## FACTS & PROCEDURAL HISTORY

On January 21, 2012, Joshua Breaux, in the course of his employment with Synagro Technologies (Synagro), allegedly sustained injuries to his leg, head, back, and neck when a centrifuge exploded on the rig on which he was working outside of Breaux Bridge, Louisiana.[1] The instant suit followed.[2]

Centrifuges are used in drilling operations to separate solids and liquids during the drilling of a well.[6] According to the affidavit of Ronald P. Holt, president of CRE, "in the event

---

[1] Notice of Removal [Doc. 1], at ¶ 2.
[2] *See generally* Pet. [Doc. 1-1].
[6] Aff. of Ronald P. Holt [Doc. 18-4] at ¶ 5. *See also* Memo. in Supp. [Doc. 19-5] at 2.

1

of adverse conditions, the centrifuge may vibrate, causing the vibrator to [sic] switch to engage stopping the operation."[7] The GS coupling, which is designed to prevent a centrifuge from plugging up and incurring damage, is a device which is set to trip when the centrifuge reaches its maximum tolerable torque, thereby shutting it off to protect a gear unit from overloading.[9]

On June 14, 2011, Synagro purchased two used centrifuges from Alex Tennison in California.[10] On or before July 5, 2011, CRE refurbished the rotator assembly on each of the centrifuges before shipping them to G Tech—a separate entity that mounted the units, tested them, and fitted each with new control panels—at Synagro's direction.[11] The unit that allegedly caused Mr. Breaux's injuries was then shipped from G Tech to Synagro.[12] Synagro operated the centrifuge in question from July 2011 to January 2012, at which time Dustin Dillard, a Synagro employee, contacted Mr. Holt, at CRE, to advise him that the centrifuge was in need of maintenance and repair.[13]

CRE performed repairs on the centrifuge in question on January 13, 2012.[14] Mr. Dillard informed Mr. Holt that the GS coupling in the centrifuge had been changed out two or three times within the previous six months by Synagro because it was tripping inappropriately.[15] Upon discovering that the internal washers and springs were not the correct size, and were "therefore touching rotating pieces causing friction bringing about the tripping incidents[,]" CRE "repaired the washers, springs and bearings in the GS coupling as well as the small pinion shaft

---

[7] *Id.*
[9] Aff. of Ronald P. Holt [Doc. 18-4] at ¶ 19. *See also* Memo. in Supp. [Doc. 19-5] at 4.
[10] Aff. of Ronald P. Holt [Doc. 18-4], at ¶ 3.
[11] *Id.* at ¶¶ 4, 6-7.
[12] *Id.* at ¶ 8.
[13] *Id.* at ¶ 8-11.
[14] Aff. of Ronald P. Holt [Doc. 18-4], at ¶ 9.
[15] *Id.* at ¶ 11.

2

on the centrifuge."[16] Mr. Holt states that he confirmed that none of the equipment that was responsible for the tripping problems, nor the centrifuge itself, was manufactured by M-I.[17]

Synagro picked up the centrifuge on January 17, 2012, following CRE's repairs.[18] The alleged accident occurred on January 21, 2012.[19] Mr. Holt examined the centrifuge in question on January 23, 2012 and noted that the centrifuge was an "NX518 decanter centrifuge with the GS coupling at issue on the decanter stamped CT221[,]" which stands for "Centrifuge Technology, Job No. 221."[20] Mr. Holt states that Centrifuge Technology is a separate and distinct entity from CRE, and a competitor in their industry.[21] Mr. Holt states that his examination revealed that neither the centrifuge's GS coupling, nor the gear box, were the same pieces of equipment that were installed by CRE prior to the incident.[22] He also states that the subject centrifuge was not an M-I unit.[23]

On January 2, 2013, the plaintiffs filed suit against CRE and M-I in the Thirty-First Judicial District Court for the Parish of Jefferson Davis, Louisiana.[24] The plaintiffs allege that the centrifuge was "improperly assembled by the vendor and/or manufacturer."[25] Mr. Breaux seeks to recover for personal damages, while his wife seeks to recover for loss of consortium and services.[26] Both M-I and CRE filed the instant Motions for Summary Judgment [Docs. 18 & 19]

---

[16] *Id.* at ¶ 12-13.
[17] *Id.* at ¶ 12.
[18] *Id.* at ¶ 15.
[19] Pet. [Doc. 1-1], at ¶¶ II-III.
[20] Aff. of Ronald P. Holt [Doc. 18-4], at ¶ 17.
[21] *Id.* at ¶ 17. *See also* Statement of Uncontested Facts [Doc. 19-4], at ¶ 16.
[22] *Id.* at ¶ 20.
[23] *Id.* at ¶ 20. *See also* Aff. of James Gharst [Doc. 18-5], at 1. Mr. Holt's affidavit also notes that, upon gaining access to the subject centrifuge on September 26, 2013, many of the component parts had at that time gone missing. Aff. of Ronald P. Holt [Doc. 18-4], at ¶ 22.
[24] *See generally* Pet. [Doc. 1-5].
[25] Pet. [Doc. 1-1], at ¶ IV.
[26] Pet. [Doc. 1-1], at ¶ VIII-IX.

on May 6, 2014. Both motions seek summary judgment predicated solely on their assertions that neither CRE nor M-I are manufacturers of the centrifuge in question.[27]

## LAW & ANALYSIS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party." *Dreyer v. Yelverton*, 291 Fed. Appx. 571, 576 (5th Cir. 2008) (*citing Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 478 (5th Cir.2002)). When the moving party has carried its burden under Federal Rule of Civil Procedure 56(c), "[t]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*citing* Fed. R. Civ. P. 56(c)) (emphasis deleted). Summary judgment may be granted when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule." *Hibernia Nat'l Bank v. Administracion Cent. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985) (*citing John v. La. (Bd. of Trustees for State Colleges & Universities)*, 757 F.2d 698, 709 (5th Cir.1985)). The Local Rules for the Western District of Louisiana provide that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for the purposes of the motion, unless controverted as required by this rule." W.D. La. LR 56.2.

---

[27] *See* Mot. for Summ. J. [Doc. 18], at 1. *See also* Mot. for Summ. J. [Doc. 19], at 1.

## CRE's Motion for Summary Judgment

While it has not been expressly stated, the plaintiff's claims at issue herein would seem to arise under the Louisiana Products Liability Act (LPLA).[46] The LPLA establishes the exclusive theories of liability in actions against manufacturers for damage caused by their products. *See* LA. REV. STAT. ANN. § 9:2800.52. A plaintiff must prove four elements to establish a claim under the LPLA:

> (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Ayo v. Triplex, Inc.*, 457 F. Appx. 382, 385-86 (5th Cir. 2012) (additional citations omitted). "'Manufacturer' means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. 'Manufacturing a product' means producing, making, fabricating, constructing, designing, *remanufacturing, reconditioning* or *refurbishing* a product." LA. REV. STAT. ANN. § 9:2800.53(1). (emphasis added). Furthermore, the LPLA also defines a manufacturer as "[a] person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer or the product." LA. REV. STAT. ANN. § 9:2800.53(1)(a).

According to Black's Law Dictionary, to "remanufacture" something is to "refurbish (a used product) by renovating and reassembling its components." *Remanufacture Definition*, BLACK'S LAW DICTIONARY FREE ONLINE LEGAL DICTIONARY 2ND ED., http://thelawdictionary.org/remanufacturing/ (last visited July 10, 2014). "Refurbishing" is

---

[46] *See* Pet. [Doc. 1-1] at ¶ IV, VII (wherein the plaintiffs state that the centrifuge was "improperly assembled" and that the "sole and proximate cause of the accident and injury herein was the fault and/or negligence of the defendants"). Notably, neither the plaintiffs nor the defendants at any time mention the LPLA, or negligence under Louisiana Civil Code article 2315, anywhere in their briefs. In fact, they cite to virtually no law throughout, with the exception of the summary judgment standard of Federal Rule of Civil Procedure 56. While the plaintiffs' complaint could arguably be said to assert more than just claims under the LPLA, because the only matter presently before the court pertains to the defendants' statuses as manufacturers, that is the only issue that shall be decided herein.

5

defined as the "bringing [of] older or damaged equipment to either a better looking or workable condition." *Refurbishing Definition*, BLACK'S LAW DICTIONARY FREE ONLINE LEGAL DICTIONARY 2ND ED., http://thelawdictionary.org/refurbishing/ (last visited July 10, 2014). "Reconditioning" is defined as the "[r]e-calibrating and servicing [of] equipment to bring it back to near new or original operational level." *Refurbish Definition*, BLACK'S LAW DICTIONARY FREE ONLINE LEGAL DICTIONARY 2ND ED., http://thelawdictionary.org/reconditioning/ (last visited July 10, 2014).

While the statutory definitions are indeed broad, it is noteworthy that at least one court has refused to impose liability under the LPLA upon a business engaged in what may most properly be described as equipment repair. *See, e.g., Loper v. Nat'l Union Fire Ins. Co.*, No. 99-1350, 2001 U.S. Dist. LEXIS 2406, at *8 (E.D. La. Mar. 2, 2001). In *Loper*, the court declined the plaintiff's invitation to hold that the defendant-automobile repair center was a manufacturer for purposes of the LPLA where the defendant's activity consisted primarily of installing pre-assembled parts—that were themselves defective—into a Mack truck. *Loper*, 2001 U.S. Dist. LEXIS 2406, at *3. The *Loper* court pointed to *Coulon v. Wal-Mart Stores, Inc.*, 734 So. 2d 916, 921 (La. 1999), *writ denied*, 747 So. 2d 1125, to distinguish between the installation of a defective component part—as was the case in *Loper*—and a defect that is *created* in the assembly process through a substandard assembly, as was the case in *Coulon*. *Loper*, 2001 U.S. Dist. LEXIS 2406, at *9-11 (citations omitted).

CRE argues that, while it has conducted repairs on the centrifuge in question, it did not "manufacture" any of the component parts or "refurbish, replace, or repair the parts that allegedly failed."[47] Specifically, CRE claims that the gear box and GS coupling that it originally installed were not the same as those which were installed in the centrifuge at the time of the

---

[47] Mot. for Summ. J. [Doc. 19] at 1.

accident which bore the identification of Centrifuge Technology rather than CRE.[48] The plaintiffs, however, argue that it is still unclear as to who is responsible for the alleged injury caused by the centrifuge, and that, because CRE admits to repairing the centrifuge days before the accident, there remains a material issue of fact as to liability.[50]

It is difficult under the circumstances for the court to affirmatively find that CRE is definitely *not* a manufacturer under the LPLA, as CRE requests in its motion.[51] As a starting point, CRE candidly states that the "two centrifuge machines were shipped to CRE shortly after purchase to *refurbish* the rotator assembly for each of these centrifuges."[52] The affidavit of CRE president, Mr. Holt, confirms this statement.[53] CRE also conducted tests and repairs on the centrifuge only days before the incident in January, 2012, repairing washers, springs, and bearings, but it now argues that, because the GS coupling and gear box installed within the centrifuge at the time of the incident may not have originated from CRE, then CRE cannot be a manufacturer.[54]

Whether CRE's repair work caused the malfunction which allegedly injured Mr. Breaux is a question of proximate cause separate and distinct from whether or not CRE is a manufacturer of the centrifuge for purposes of the LPLA. It certainly seems that CRE's involvement with the centrifuge rises to the level of "remanufacturing, reconditioning, or refurbishing" such as would satisfy the statutory definition of "manufacturer." *See* LA. REV. STAT. Ann. § 9:2800.53(1). However, accepting for the moment the *Loper* court's distinction between a repairer who installs a defective part—to whom the LPLA would not be applicable—as opposed to a repairer who

---

[48] Statement of Uncontested Facts [Doc. 19-4], at ¶ 17 (*citing* Aff. of Ronald P. Holt [Doc. 18-4], at ¶ 20).
[50] Opp. [Doc. 23], at. 1.
[51] Memo. in Supp. [Doc. 19-5], at 8.
[52] Memo. in Supp. [Doc. 19-5], at 2.
[53] Aff. of Ronald P. Holt [Doc. 18-4], at ¶ 6.
[54] Aff. of Ronald P. Holt [Doc. 18-4], at ¶¶ 13-17; *see also* Memo. in Supp. [Doc. 19-5], at 8.

7

conducts a substandard *assembly*—to whom the LPLA would be applicable—, it does not seem possible to determine whether CRE was a manufacturer until it can be determined whether CRE's centrifuge repairs were themselves substandard. Such an interpretation links the issue of causation to CRE's status as a manufacturer.

The court need not make such a determination today, because, under either the plain language of the statute, or the more restrictive interpretation advanced by the *Loper* court, it is not possible that CRE is *not* a manufacturer of the centrifuge in question per the terms of the LPLA without additional information. The fact that additional discovery is called for is supported by the recent granting[55] of the plaintiffs' opposed Motion to Continue Trial [Doc. 32] following oral argument before the Magistrate Judge. Moreover, as to CRE's assertions that Synagro worked on the centrifuge after CRE conducted its repairs,[56] that question speaks more to causation than to whether or not CRE may properly be considered a manufacturer under the statute. Accordingly,

**IT IS ORDERED** that CRE's Motion for Summary Judgment [Doc. 19] be and hereby is **DENIED**.

### M-I's Motion for Summary Judgment

Like CRE, M-I asserts that it is not a manufacturer of the centrifuge or the part in question that caused the alleged incident.[57] In support, M-I has submitted the affidavits of James Gharst, M-I's Global Business Line Manager of Centrifuges, and Mr. Holt.[58] Mr. Gharst states the M-I has never manufactured centrifuges with an "NX" designation, as was found on the

---

[55] Minutes from July 15, 2014, Mot. Hearing [Doc. 38].
[56] *See* Memo. in Supp. [Doc. 19-5], at 8.
[57] Mot. for Summ. J. [Doc. 18], at 1; Memo. in Supp. [Doc. 18-1], at 6-7.
[58] *See generally* Aff. of Ronald P. Holt [Doc. 18-4]. *See also* Aff. of James Gharst [Doc. 18-5].

centrifuge herein.[59] He also states that the photographs of the subject centrifuge contain no M-I-manufactured parts, and that the centrifuge unit which Synagro presented to him for inspection in September, 2013, likewise was not an M-I unit.[60] These findings are confirmed by Mr. Holt of CRE.[61] The plaintiffs have filed no opposition to M-I's Motion [Doc. 18], but they have stated that the "plaintiff[s] ha[ve] not developed any facts allowing a good faith opposition to be filed."[62]

> Rule 56(e) provides,
>
> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
> (4) issue any other appropriate order.

FED. R. CIV. P. 56(e).

M-I has submitted multiple affidavits attesting to its complete lack of involvement with the subject centrifuge. The plaintiffs have failed to submit either an opposition to M-I's Motion [Doc. 18] or an affidavit or declaration pursuant to Federal Rule of Civil Procedure 56(d).[65] Considering that the plaintiffs have acknowledged their inability to develop any facts whatsoever which would allow an opposition to be filed, as well as the fact that this case was filed approximately one and one half years ago, summary judgment in favor of M-I as to the

---

[59] Aff. of James Gharst [Doc. 18-5], at 1.
[60] *Id.* at 1-2.
[61] *See* Aff. of Ronald P. Holt [Doc. 18-4], at ¶¶ 14, 20.
[62] Supplemental Memo. in Supp. [Doc. 37], at 2.
[65] See FED. R. CIV. P. 56(d), which states:
    If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
    1) defer considering the motion or deny it;
    2) allow time to obtain affidavits or declarations or to take discovery; or
    3) issue any other appropriate order.

plaintiffs' claims under the LPLA pursuant to Rule 56(e)(3) is appropriate at this time. Accordingly,

**IT IS ORDERED** that M-I's Motion for Summary Judgment [Doc. 18] be and hereby is **GRANTED**, and the plaintiffs' LPLA claims against M-I in the above captioned matter be and hereby are **DISMISSED, WITH PREJUDICE**.

Lake Charles, Louisiana, this 1 day of Oct., 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE