RECEIVED
IN LAKE CHARLES, LA.
MAY - 4 2015
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| JOSHUA BREAUX, ET AL.. | * | CIVIL ACTION NO. 2:13-CV-00245 |
| Plaintiffs. | * | |
| V. | * | JUDGE PATRICIA MINALDI |
| CENTRIFUGE REPAIR & ENGINEERING L.P., ET AL.. | * | |
| Defendants. | * | MAG. JUDGE KATHLEEN KAY |

*************************************************************

## MEMORANDUM RULING

Before the court is Centrifuge Repair & Engineering LP's ("CRE") Motion for Summary Judgment [Doc. 19]. CRE was granted leave to file a Supplemental Memorandum in Support [Doc. 52], to which the plaintiffs filed a Response [Doc. 53], to which CRE filed a Reply [Doc. 54]. For the following reasons, CRE's Motion [Doc. 52] is **GRANTED.**

### FACTS & PROCEDURAL HISTORY

On January 21, 2012, Joshua Breaux, in the course of his employment with Synagro Technologies ("Synagro"), allegedly sustained injuries to his leg, head, back, and neck when a centrifuge exploded on the rig on which he was working outside of Breaux Bridge, Louisiana.[1] The instant suit followed.[2]

Centrifuges are used in drilling operations to separate solids and liquids during the drilling of a well.[3] According to the affidavit of Ronald P. Holt, president of CRE, "in the event of adverse conditions, the centrifuge may vibrate, causing the vibrator to [sic] switch to engage

---
[1] Notice of Removal [Doc. 1] ¶ 2.
[2] *See generally* Pet. [Doc. 1-1].
[3] Aff. of Ronald P. Holt [Doc. 53-1] ¶ 5.

1

stopping the operation."[4] The GS coupling, which is designed to prevent a centrifuge from plugging up and incurring damage, is a device which is set to trip when the centrifuge reaches its maximum tolerable torque, thereby shutting it off to protect a gear unit from overloading.[5]

On June 14, 2011, Synagro purchased two used centrifuges from Alex Tennison in California.[6] On or before July 5, 2011, CRE refurbished the rotator assembly on each of the centrifuges before shipping them to G Tech—a separate entity that mounted the units, tested them, and fitted each with new control panels—at Synagro's direction.[7] The unit that allegedly caused Mr. Breaux's injuries was then shipped from G Tech to Synagro.[8] Synagro operated the centrifuge in question from July 2011 to January 2012, at which time Dustin Dillard, a Synagro employee, contacted Mr. Holt, at CRE, to advise him that the centrifuge was in need of maintenance and repair.[9]

CRE performed repairs on the centrifuge in question on January 13, 2012.[10] Mr. Dillard informed Mr. Holt that the GS coupling in the centrifuge had been changed out two or three times within the previous six months by Synagro because it was tripping inappropriately.[11] Upon discovering that the internal washers and springs were not the correct size, and were "therefore touching rotating pieces causing friction bringing about the tripping incidents[,]" CRE "repaired the washers, springs and bearings in the GS coupling as well as the small pinion shaft on the centrifuge."[12]

---

[4] *Id.*
[5] Aff. of Ronald P. Holt [Doc. 53-1] ¶ 19.
[6] *Id.* ¶ 3.
[7] *Id.* ¶¶ 4, 6-7.
[8] *Id.* ¶ 8.
[9] *Id.* ¶ 8-11.
[10] Aff. of Ronald P. Holt [Doc. 53-1] ¶ 9.
[11] *Id.* ¶ 11.
[12] *Id.* ¶ 12-13.

Synagro picked up the centrifuge on January 17, 2012, following CRE's repairs.[13] The alleged accident occurred on January 21, 2012.[14] Mr. Holt examined the centrifuge in question on January 23, 2012 and noted that the centrifuge was an "NX518 decanter centrifuge with the GS coupling at issue on the decanter stamped CT221[,]" which stands for "Centrifuge Technology, Job No. 221."[15] Mr. Holt states that Centrifuge Technology is a separate and distinct entity from CRE, and a competitor in their industry.[16] Mr. Holt states that his examination revealed that neither the centrifuge's GS coupling, nor the gear box, were the same pieces of equipment that were installed by CRE prior to the incident.[17]

On January 2, 2013, the plaintiffs filed suit against CRE and M-I in the Thirty-First Judicial District Court for the Parish of Jefferson Davis, Louisiana.[18] The plaintiffs allege that the centrifuge was "improperly assembled by the vendor and/or manufacturer."[19] Mr. Breaux seeks to recover for personal damages, while his wife seeks to recover for loss of consortium and services.[20] CRE's Motion for Summary Judgment [Doc. 19] was originally denied to allow the parties time for additional discovery.[21]

## LAW & ANALYSIS

### I. Summary Judgment Standard

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is said to be "genuine" only where a "reasonable jury

---

[13] *Id.* ¶ 15.
[14] Pet. [Doc. 1-1] ¶¶ II-III.
[15] Aff. of Ronald P. Holt [Doc. 53-1] ¶ 17.
[16] *Id.* ¶ 17.
[17] *Id.* ¶ 20.
[18] *See generally* Pet. [Doc. 1-5].
[19] *Id.* ¶ IV.
[20] *Id.* ¶ VIII-IX.
[21] *See* J. [Doc. 42] & Mem. Ruling [Doc. 41].

could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.*, No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.*, No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)).

In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n. 1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (additional citation omitted)). However, the court will not, in the absence of proof, "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore, Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little*, 37 F.3d at 1075.

## II. Classification of CRE and Causation

CRE argues in its motion that the plaintiffs are unable to show that the repairs it made to the malfunctioning centrifuge were defective.[22] In opposition to CRE's motion, the plaintiffs have reproduced portions of two deposition transcripts, one from Dustin Dillard and the other

---

[22] Def.'s Supp. Mem. to Mot. for Summ. J. [Doc. 52], at 8.

from Chad St. Germain.[23] The testimony provided establishes that CRE repaired the centrifuge and that the centrifuge exploded shortly after the repair.[24]

While it has not been expressly stated, the plaintiffs' claims at issue herein would seem to arise under the Louisiana Products Liability Act ("LPLA").[25] The LPLA establishes the exclusive theories of liability in actions against manufacturers for damage caused by their products. *See* LA. REV. STAT. § 9:2800.52. A plaintiff must prove four elements to establish a claim under the LPLA:

> (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

*Ayo v. Triplex, Inc.*, 457 F. Appx. 382, 385-86 (5th Cir. 2012) (additional citations omitted). The plaintiff bears the burden of proving the alleged defect. LA. REV. STAT. § 9:2800.54(D). In order to prove a product is unreasonably dangerous in construction or composition, it must be shown that at the time the product left the manufacturer's control, it deviated in a material way from the manufacturer's specifications or performance standards for the product, or if the product deviated from otherwise identical products made by the same manufacturer. LA. REV. STAT. § 9:2800.55. The existence of a defect cannot be inferred solely from the fact that an accident occurred. *Hanover Am. Ins. Co. v. Trippe Mfg. Co.*, 843 So.2d 571, 576 (La. Ct. App. 2003) (citing Frank L. Maraist & Thomas Galligan, Jr., Louisiana Tort Law, § 15-9, 371 (1996)).

---

[23] The court notes that these transcripts are arguably not competent summary judgment evidence because they include neither cover pages nor any other form of self-authentication.

[24] *See* Depo. of Dustin Dillard [Doc. 53-3] & Depo. of Chad St. Germain [Doc. 53-4].

[25] *See* Pet. [Doc. 1-1] ¶¶ IV, VII (wherein the plaintiffs state that the centrifuge was "improperly assembled" and that the "sole and proximate cause of the accident and injury herein was the fault and/or negligence of the defendants"). However, even if the claim were for negligence under Louisiana Civil Code article 2315, the plaintiffs have not produced evidence of causation under this theory of liability either, and they do not allege that *res ipsa loquitur* applies.

To defeat a motion for summary judgment, the nonmoving party must produce some evidence or specific facts that show the existence of a genuine issue for trial. This matter has been pending for over two years, and discovery is no longer ongoing. The plaintiffs have failed to produce evidence that CRE's repairs were defective, and therefore, they cannot show that the repairs by CRE caused Joshua Breaux's injuries.

Lake Charles, Louisiana, this 17 day of _____April_____, 2015.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE